# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement is made and entered into as of the Effective Date (being the last date signed by any Party) by Paul Gestach ("Gestach") and Auto Butler, Inc. ("Auto Butler").

**WHEREAS**, "Gestach" and "Auto Butler" are collectively the "Parties" and each Party shall include for purposes of the release, as applicable, its past and present parents, subsidiaries, affiliates, partners, owners, officers, directors, employees, attorneys, agents, trusts, trustees, spouses, heirs, executors, administrators, predecessors, successors, assigns, and insurers, and anyone claiming by or through them; and

**WHEREAS**, Auto Butler employed Gestach as a truck driver until he quit on July 30, 2019; and

**WHEREAS**, Gestach brought an action against Auto Butler captioned *Paul Gestach v. Auto Butler, Inc.*, United States District Court for the District of Minnesota, Case No. 0:19-CV-02680 (the "Action"), seeking attorney's fees and alleging that Auto Butler violated the Fair Labor Standards Act ("FLSA"), the Minnesota Fair Labor Standards Act ("MFLSA"), the California Labor Code, including §§ 510 and 512, by among other reasons not paying overtime and not providing meal and rest breaks in California, along with any other allegations or claims that could have been alleged by Gestach (the "Claims"); and

**WHEREAS**, in the Complaint, Gestach describes Auto Butler as "Auto Butler, Inc. d/b/a 'Broadway Equipment,' 'Broadway Equipment Company,' and/or 'Broadway Car Wash Equipment,'" which are also released parties; and

**WHEREAS**, Auto Butler denies Gestach's Claims; and

**WHEREAS**, the undersigned parties have determined independently that it is desirable and beneficial for them to settle, compromise and resolve their disputes in the manner and on the terms and conditions set forth herein, in order to avoid the costs, inconvenience and uncertainty of continued litigation, and for that purpose have entered into this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals, the mutual promises and covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, Gestach and Auto Butler agree as follows:

1. **Recitals.** The recitals and facts set forth above are incorporated into this Agreement as part of the terms hereof.

2. **Auto Butler Payment.** Auto Butler shall pay to Gestach five thousand dollars ($5,000.00) within ten (10) days of full execution of this Agreement and approval of the Court as follows: (i) a check in the amount of one thousand five hundred dollars ($1,500.00) made payable to Gestach, which payment shall be payable as wages (IRS Form W-2), less all applicable state and federal withholding taxes and other deductions Auto Butler is required by law to make, in accordance with Auto Butler's regular payroll practices; a (ii) a check in the amount of one thousand five hundred dollars ($1,500.00) made payable to Gestach, which payment shall be payable as liquidated damages (IRS Form 1099-Misc) with no withholdings; and (iii) a check in the amount of two thousand dollars ($2,000.00) made payable to Gestach's attorneys, Johnson Becker, PLLC.

3. **Dismissal of Claims.** Upon receipt of the payment required by Paragraph 2, the Parties, through counsel, shall execute any documents as may be reasonably necessary to

2

effectuate a dismissal of the Claims and the Action, including but not limited to a Stipulation of Dismissal With Prejudice.

4. **Release and Gestach's Rights**. Gestach hereby completely remises, releases, holds harmless, and forever discharges Auto Butler of and from any and all causes of action, claims, debts, demands, damages, costs, attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kind, both at law and in equity, that Gestach had, has or might have against Auto Butler as of the Effective Date, arising from or related to Claims, any acts or omissions which relate to Gestach's work or employment with Auto Butler, whether such claims are past or present, known, suspected, or unknown, including but not limited to claims for violations of the Fair Labor Standards Act ("FLSA"), the Minnesota Fair Labor Standards Act ("MFLSA"), §§ 510 and 512 and any other provision of the California Labor Code or California or other State's laws, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, as amended by the Older Workers Benefit Protection Act, the Employee Retirement Income Security Act (ERISA), the Minnesota Human Rights Act, Minn. Stat. §181.81, the Equal Pay Act, and any other federal, state, or local civil rights, or employment laws based on race, gender, or age or any other protected class status, as well as claims for breach of contract, fraud or misrepresentation, defamation, intentional and negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, promissory estoppel, negligence, or other breach of duty, wrongful termination of employment, retaliation, harassment, a failure to pay wages, compensation or benefits, and any other claims for any other unlawful employment practices, whether legal or equitable.

This release covers both claims that Gestach knows about or may not know about or expect to exist, at the time of the signing of the Agreement. Gestach waives all rights under California Civil Code section 1542, and any similar statute or rule of decision in any other jurisdiction. Section 1542 reads as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Gestach agrees that he will not apply, reapply, seek, and/or accept employment with Auto Butler or any of its affiliates or successors.

Gestach also agrees that he has full authority to enter into this Agreement, that he has not filed for bankruptcy, and that he has not assigned any right that he may have to any other person and/or entity which might affect this settlement or the undertakings herein.

The money and benefits that Gestach is receiving in this Agreement as the Company's Obligations are full and fair payment for the release and waiver of the above legal and equitable claims, and they have a value that is greater than anything else to which he was already entitled if he did not enter into this Agreement.

Gestach understands that the above release and waiver does not apply to any claim that cannot be legally waived, including unemployment compensation and worker's compensation benefits, and rights and claims for age discrimination that arise under the ADEA as amended by the OWBPA after the date on which he signs this Agreement.

4

Gestach also understands that without being penalized or having an obligation to notify the Company, this Agreement does not prohibit him from filing or reporting a charge or complaint with; or testifying, assisting, cooperating or participating in an investigation or legal proceeding conducted or initiated by, the Equal Employment Opportunity Commission, Minnesota Department of Human Rights, National Labor Relations Board, Occupational Safety and Health Administration, Securities and Exchange Commission, Minnesota Department of Labor and Industry, or other federal, state, or local regulatory or law enforcement commission or agency ("Government Agencies"). If he files or reports a charge or complaint, Gestach agrees that the money and benefits that he received in this Agreement as the Company's Obligations completely satisfy his individual claims in connection with the charge or complaint, and he is not entitled to any other individual monetary relief of any kind with respect to the legal and equitable claims that he has waived and released in this Agreement, unless his waiver and release were deemed unlawful or otherwise invalid. Provided, this Agreement does not limit Gestach's right to receive an award for information provided to any Government Agencies.

5. **Subsequently Discovered Facts**. The Parties acknowledge that they may hereafter discover facts arising on or before the date of this Agreement which may be different from or in addition to those which they now believe to be true. The Parties agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or any Party's discovery thereof.

6. **Confidentiality of Settlement**. The Parties agree that the terms and provisions of this Agreement, including all discussions during the negotiation of this Agreement, shall remain strictly confidential. No Party shall publicize, or disclose the terms of this Agreement, nor any of the negotiations and discussions between and among the Parties concerning this Agreement,

5

except that the Parties may discuss the terms of this Agreement, to the extent they have a legitimate need to know, with their attorneys, spouse (if applicable), tax, and taxing authorities, officers, others necessary to facilitate payments required by this Agreement, or upon the order of any court of competent jurisdiction or otherwise required by law, and then only after giving the other Parties notice in writing with sufficient time to allow the other Parties to intervene and to object to any such disclosure. If asked about this Agreement, its subject matter, its terms, or the negotiations leading up to or resulting in this Agreement, the Parties shall respond only "NO COMMENT."

7.  **No Admission of Wrongdoing**. The Parties agree that this Agreement does not constitute an admission of fault, liability or wrongdoing by any Party.

8.  **Non-Disparagement**. Gestach agrees that he shall not, directly or indirectly, publicly disparage or defame or otherwise speak in a negative, derogatory or unflattering manner about Auto Butler, its products, its services, its owners, employees, or officers, whether in writing, verbally or electronically. Nothing herein prevents Gestach from providing complete and truthful testimony or information to a court or governmental agency, or in a legal or arbitration proceeding, pursuant to a subpoena, court order, or other legal means.

9.  **Heirs, Successors and Assigns**. This Agreement shall inure to the benefit and shall be binding upon the Parties' heirs, executors, administrators, representatives, agents, successors and assigns.

10. **Legal Representation**. Gestach acknowledges that he has been advised by Auto Butler to consult with his own attorney before executing this Agreement, that he has had a full opportunity to consider this Agreement, that he has had a full opportunity to ask any questions that he may have concerning this Agreement, the release contained herein, or the settlement of

6

the Claims, and that he has not relied upon any statements or representations made by Auto Butler or its attorneys, written or oral, other than the statements and representations that are explicitly set forth in this Agreement.

11. **Entire Agreement.** This Agreement contains the entire agreement of the Parties and may be changed, modified or altered only by an agreement in writing, signed by the Parties. No other representations, inducements, covenants, undertakings, or other prior or contemporaneous agreements, oral or written, respecting any matters which are not specifically incorporated herein shall be deemed in any way to exist or to bind any of the Parties.

12. **Comprehension of Terms and Construction of Ambiguities.** The Parties attest that their attorneys have explained to them the meaning of this document and the consequences of signing it. The Parties acknowledge that they have been represented by competent legal counsel of their own choosing in this dispute, and in connection with the settlement and the negotiations, drafting and execution of this Agreement. Accordingly, the language used in this Agreement will be deemed to be the language chosen by all Parties to express their mutual intent, and no rule of strict construction against any Party will apply to any term or condition of this Agreement.

13. **Severability.** If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction and it cannot be modified to be enforceable, that provision will become void, leaving the remainder of this Agreement in full force and effect.

14. **Warranty of Capacity to Execute Agreement.** Each of the Parties to this Agreement represent and warrant: that no other person or entity has or has had any interests in the claims, demands, obligations, causes of action or disputes referenced in this Agreement; that

7

they have the sole right and exclusive authority to execute this Agreement and receive the sums specified herein; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action covered by this Agreement.

15. **Execution in Counterparts**. This Agreement may be signed in counterparts by the Parties hereto with the same force and effect as if the above parties signed the same original agreement. Facsimile copies, scanned copies, and photocopies of the parties' signatures to this Agreement shall be valid and enforceable to the same extent as original signatures, and the Parties hereby waive any requirement that original signatures be produced as a condition of proving the validity of, or otherwise enforcing this Agreement.

Dated: July 02, 2020

By: *Paul James Gestach*
Paul James Gestach (Jul 2, 2020 17:31 CDT)
Paul Gestach

**AUTO BUTLER, INC.**

Dated: July 13, 2020

By: *Keith Schluter*

8